O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS DANILO BARRERA,<br><br>                    Petitioner,<br>        v.<br><br>KRISTI NOEM et al.,<br><br>                    Respondents. | Case No.:  5:26-CV-00531-MEMF<br><br>**ORDER GRANTING PETITIONER'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [DKT. NO. 4]** |

Before the Court is the Ex Parte Application for Temporary Restraining Order and Order to Show Cause filed by Petitioner Carlos Danilo Barrera. Dkt. No. 4 ("Application"). For the reasons stated below, the Application is GRANTED.

/ / /

/ / /

## I. Background

### A. Factual Background[1]

Petitioner is a citizen of El Salvador. Dkt. No. 1 ¶ 40 ("Petition"). He has lived in the United States since he was eight years old. *Id.* In 1996, Petitioner was convicted of second-degree murder and sentenced to state prison. *Id.* The conviction was based on an offense that occurred when Petitioner was seventeen years old. *Id.*

Petitioner earned his release from state prison in 2020. *Id.* ¶ 41. Upon release from state prison, Petitioner was transferred to ICE custody and placed into removal proceedings. *Id.* On March 19, 2021, an immigration judge ordered Petitioner removed to El Salvador, but granted his application for protection under the Convention Against Torture ("CAT"). *Id.* ¶ 2. After he was ordered removed, Petitioner remained in ICE custody for eight months. *Id.* ¶ 42. He was released on an order of supervision ("OSUP") in March 2021 after the agency was unable to effectuate his removal. *Id.* ¶¶ 42–43.

Since his release from custody, Petitioner has earned his certificate in solar installations and has worked installing solar systems for the past four years. *Id.* ¶ 43. He is engaged to a U.S. citizen, and his fiancée has three U.S. citizen children. *Id.* He has no new criminal history since his release on OSUP. *Id.* ¶ 44.

Petitioner's OSUP requires that he check in yearly with ICE. *Id.* Until November 25, 2025, he did so. *Id.* He missed his 2025 appointment because he misplaced the paperwork and did not put the appointment date on a calendar. *Id.* ¶ 44. Upon realizing his mistake, Petitioner appeared at the Los Angeles ICE Field Office on January 2, 2026. *Id.* ¶ 45. There, an officer instructed him that he would be detained. *Id.* The officer said that the official reason on Notice would be his missed check=in appointment. *Id.* But he also noted that "the real reason was that the current administration is making officers detain everyone." *Id.* Petitioner's ICE-issued Notice indicated that Petitioner's

---

[1] Unless otherwise indicated, the following factual background is derived from the Petition for a Writ of Habeas Corpus. Dkt. No. 1 ("Petition"). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

2

release was being revoked because he missed an in-person check-in, that ICE has determined that he could be expeditiously removed, and that his case was under review by a third country for the issuance of a travel document. *Id.* ¶¶ 45–46. The Notice also informs Petitioner that he would "promptly be afforded an informal interview." But he has received no such interview since his January 2 detention. *Id.* ¶ 47. Nor has ICE conducted a revocation custody review evaluation of contested facts relevant to the revocation, or determined whether the facts warrant revocation and further denial of release. *Id.* ¶ 48.

Petitioner was detained at his appointment and transferred to the Adelanto ICE Processing Center in Adelanto, California, where he remains today. *Id.* ¶ 49. ICE officials have attempted to coerce Petitioner to sign a request for travel documents to El Salvador, but he refused. *Id.* ICE officers have, at other times, indicated that Petitioner may be removed to Mexico, Guatemala, Honduras, or Belize. *Id.* ¶ 50. No travel documents have been issued in Petitioner's name. *Id.* Petitioner fears removal to Mexico because of his understanding that the Mexican government could then send him back to El Salvador where he will be tortured. *Id.*

Petitioner has now been detained for over one month. *Id.* ¶ 52. He has received no other explanation for his re-detention or an interview where he can contest his OSUP revocation or demonstrate that his removal is not reasonably foreseeable. *Id.*

### B. Procedural History

On February 6, 2026, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in this matter. *See* Petition. On the same day, Petitioner filed the Application. *See* Application. This Court accordingly set an expedited briefing schedule. *See* Dkt. No. 6. It ordered Respondents to file a response by Monday, February 9, at 5 PM. *Id.* And it allowed Petitioner to file a Reply by Tuesday, February 10, at 5 PM. *Id.*

Respondents did not respond. On February 10, Petitioner filed a Reply noting that no opposition had been filed and requesting that this Court grant the Application as unopposed. Dkt. No. 9 ("Reply").

1  This Court has reviewed the filings and deemed this matter appropriate for decision without
2  scheduling a hearing. L.R. 83-9.1.1.

3  **II.       Applicable Law**

4       **A. Preliminary Injunctions**

6  The analysis that courts must perform for temporary restraining orders and preliminary
7  injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d
8  832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of
9  a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary
10 remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To
11 qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2)
12 a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips
13 in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the
14 preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion."
15 *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

16      The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot
17 show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance
18 of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction,
19 so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the
20 injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th
21 Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied
22 if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670,
23 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party,
24 it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

25      **B. Habeas Petitions in the Immigration Detention Context**

26  District Courts are "generally prohibit[ed]" from "entering injunctions that order federal
27 officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out"
28 certain provisions of the INA, found in 8 U.S.C. sections 1221 to 1232. *Garland v. Aleman*

*Gonzalez*, 596 U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.' *Id.* (quoting 8 U.S.C. § 1252(f)(1)). This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).

Once an immigrant has been "released under an order of supervision," the following laws govern. 8 U.S.C. § 241.13(i)(1). To "revoke an [noncitizen]'s release under this section and return the [noncitizen] to custody," the Service must "determine[] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release," and is entitled to an initial interview after the immigrant's return to custody to allow the immigrant to respond, submit evidence, or otherwise demonstrate that "there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.* § 241(i)(3).

### III.  Discussion

#### A.  Applying the *Winter* factors, Petitioner is entitled to a temporary restraining order.

Petitioner requests a temporary restraining order and an order to show cause as to why a preliminary injunction should not issue. Petition at 3. The standard that governs temporary restraining orders is substantively identical to that of a preliminary injunction. Having determined below that he is entitled to a temporary restraining order, the Court will issue an order to show cause as to why a preliminary injunction should issue, which should permit further development of the record and additional briefing.

The Application advances four claims for injunctive relief. First, it argues that Respondents' failure to comply with his liberty interest's protections violated both ICE regulations and due process. Second, it argues that Respondents' revocation of Petitioner's OSUP was arbitrary and capricious. Third, it argues that, if he were removed to El Salvador, Respondents would be violating

the Convention Against Torture and its implementing regulations. Fourth, it argues that removal to a third country without due process and for punitive reasons would be unlawful.

For the purposes of this Application, this Court will address only whether Petitioner has shown a likelihood of success on the merits of his first claim—because it finds that Petitioner has made the requisite showing, it need not reach the APA claim or the removal-based claims.[2]

The Court applies the *Winter* factors to Petitioner's due process and regulatory claim below.

### i. The first *Winter* factor, likelihood of success on the merits, is met.

Petitioner argues that he is entitled to release because the Government violated both due process and INA regulations by re-detaining him without an informal interview or similar an opportunity to be heard. Application at 13. For the reasons below, this Court finds he is likely to succeed on the merits of this claim.

This Court first addresses Petitioner's due process rights. "'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Accordingly, immigration detainees pending removal are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Importantly, the Respondents have not filed an opposition, and so have forfeited their opportunity to dispute that Petitioner has the right to notice and the opportunity to be heard on his redetention. Nor have they alleged, despite an opportunity to do so, that Petitioner *was* given the opportunity to be heard. To that end, the Government fails to justify why it should be permitted to

---

[2] The third and fourth stated grounds—challenging removal to El Salvador as violative of the Convention Against Torture, and challenging removal to a third country as a due process violation—concern the question of whether Petitioner's removal to a given country, if it happened, would be proper. But it is well settled that "speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). And, based on the Petition and Application, it appears unclear if Petitioner would be removed to El Salvador or a third country. So it is not clear that Petitioner presently faces the requisite likelihood of irreparable harm on either theory, or that either question is ripe for this Court's consideration. Thus, the Court does not address these grounds for relief.

1  exercise its discretion under the regulation in a way to contravenes the requirement of the same
2  regulation to provide notice and an opportunity to be heard. To be clear, whether detaining (and even
3  removing) Petitioner is permissible is not the question before this Court. Instead, it is whether
4  Petitioner is entitled to some due process protections—namely, a prompt opportunity to be heard at
5  the time that the Government took Petitioner into custody. To that end, on this limited record, this
6  Court finds that Petitioner has a likelihood of success on his constitutional claim.

7      This Court next turns to the statutory claim. In light of *J.G.G.*, it appears that the applicable
8  laws, namely 8 C.F.R. § 241.13(i)(3) and 8 C.F.R. § 241.4(*l*)(1), are the means by which ICE has
9  determined it will meet the due process rights of putative detainees. Under the former, an immigrant
10 who has been released under an order of supervision "will be notified of the reasons for revocation of
11 his or her release." 8 C.F.R. § 241.13(i)(3). Promptly after the immigrant's return to custody, "the
12 Service will conduct an initial informal interview . . . to afford the [noncitizen] an opportunity to
13 respond to the reasons for revocation stated in the notification." *Id.* At that interview, the noncitizen
14 "may submit any evidence or information that he or she believes shows there is no significant
15 likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated
16 the order of supervision." *Id.* "The revocation custody review will include an evaluation of any
17 contested facts relevant to the revocation and a determination whether the facts as determined warrant
18 revocation and further denial of release." *Id.* And under Section 241.4(*l*)(i).

19     As Respondents have not filed any opposition, Respondents make no argument that these
20 statutes do not control, so there is no opposition on this record to Petitioner's argument that he is likely
21 to succeed on the merits. Moreover, this Court declines to take the extraordinary position that
22 individuals in Petitioner's position, who have been granted an order of supervision that the
23 Government then withdraws, are not entitled to notice and an opportunity to be heard in the absence
24 of clear direction—in binding law, in the relevant statutes, or in the applicable regulations—to that
25 effect. This Court therefore finds that Petitioner is likely to succeed on the merits of his claim that
26 detention is only permitted upon notice and an opportunity to be heard.

27
28

Today, this Court must determine whether Petitioner is likely to eventually prevail on the merits. For the reasons described above, this Court finds that he is. In sum, the first *Winter* factor is met.

### ii. The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.

To establish the second *Winter* requirement, Petitioner must demonstrate a likelihood that he will suffer irreparable harm without a temporary restraining order. Respondents do not address this factor, nor do they argue that Petitioner has failed to make the requisite showing. This Court finds that the second *Winter* requirement is met.

As a threshold matter, Petitioner has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). The Government's discretion to issue removal orders is not at issue here. Instead, Petitioner argues that the Government has not complied with the legal process that is due to him as a detained noncitizen. And "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, Petitioner's ongoing detention of indeterminate length inherently risks him irreparable harm, as it is not clear when he will be processed, released, or removed.

Thus, as this Court has already found that Petitioner has a sufficient likelihood of success on the merits of his challenges to his current detention—in part based upon Petitioner's constitutional rights—this Court finds the second *Winter* factor is met.

### iii. The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.

When, as here, the nonmoving party is a governmental entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court thus considers the third and fourth factors—whether the "balance of equities" is in Petitioner's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

The balance of equities appears to tilt in Petitioner's favor. It is true that the Government has a strong interest in the enforcement of federal immigration law. But the Government "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law. *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). To that end, "[a]ny additional administrative costs to the government are far outweighed by the considerable harm to plaintiffs' constitutional rights in the absence of the injunction." *Hernandez*, 872 F.3d at 996. "Faced with such a conflict between [the minimal cost to implement additional due process safeguards] and preventable human suffering," this Court finds ample reason to conclude that "the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). This is particularly true given that Respondents do not argue otherwise, nor do they allege that the issuance of a TRO in this matter would cause them harm at all. And, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Respondents do not contend that this Court should find otherwise. In sum, the third and fourth *Winter* factors are met here.

**IV.   Conclusion**

For the foregoing reasons, the Application is GRANTED. Petitioner's request for a temporary restraining order is GRANTED. This Court will consider issuing a preliminary injunction following the Order to Show Cause hearing described below.

1. Respondents are ORDERED to release Petitioner from custody within forty-eight hours,[3] and not redetain him without compliance with 8 C.F.R. § 241.4(*l*)(1), 8 C.F.R. § 241.13(i), and 8 U.S.C. § 1231;
2. Respondents are enjoined from relocating Petitioner outside of the Central District of California pending final resolution of this matter;

---

[3] This Court understands, based on Respondents' representations from hearings in similar immigration habeas cases, that Respondents believe that forty-eight hours is a reasonable amount of time to effectuate release.

3. This Court orders Respondents to show cause, in writing, as to why a preliminary injunction should not issue.

    a. Respondents' brief is due at 5 PM on Wednesday, February 18. Petitioner may file a response brief by Friday, February 20.

    b. The parties may stipulate to a different briefing schedule via joint stipulation filed by 5 PM on Wednesday, February 18. Should the parties wish to extend either briefing deadline past February 18, the parties should also stipulate that this temporary restraining order may remain in effect (without converting to a preliminary injunction) through this Court's decision on the preliminary injunction.

    c. The parties' briefing on the preliminary injunction should address whether the granting of this TRO renders the PI request, and the habeas petition itself, moot.

4. The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order by Wednesday, February 18.

IT IS SO ORDERED.

Dated: February 13, 2026

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge